

1996 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

7-29-1996

# Feige v. Sechrest

Precedential or Non-Precedential:

Docket 95-1236

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Feige v. Sechrest" (1996). *1996 Decisions*. Paper 128.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/128

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 95-1236


ROBERT FEIGE; PATRICIA FEIGE; DP REALTY TRUST, INC.;
DP REALTY TRUST; FICREST RETIREMENT CORPORATION;
FICREST RETIREMENT NOMINEE TRUST; COVEST, LTD.

v.

STEVEN SECHREST; EMIL MOLIN; FREDERICK RICHARDSON;
CHARLES LUNDEN; HARRY STOKES; THE FRENCH COMPANY, INC.;
LINDA KAISER, Insurance Commissioner of the Commonwealth of
Pennsylvania

Robert F. Feige, Patricia Feige, DP Realty Trust, Inc.,
DP Realty Trust, FiCrest Retirement Corporation, Ficrest
Retirement Nominee Trust and CoVest, Ltd.,
Appellants

(Caption amended as per the Clerk's 8/28/95 Order)


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 94-06738)


Argued October 31, 1995

Before:  NYGAARD, ALITO and SAROKIN, Circuit Judges.

(Opinion Filed: July 29, 1996 )


Joshua Slavitt (Argued)
Alan M. Rosen
Klehr, Harrison, Harvey,
Branzburg & Ellers
1401 Walnut Street
Philadelphia, PA 19102

John H. Perten
Bowditch & Dewey
161 Worcester Road
6th Floor
Framingham, MA 01701

Attorneys for Appellants

Frederick Richardson,
Pro se

Steven Kapustin
Heller, Kapustin,
Gershman & Vogel
486 Norristown Road
Suite 230
Blue Bell, PA 19422

Attorney for Appellee
Charles Lunden

William G. Frey
Jerome J. Shestack
Bernard Chanin (Argued)
Wolf, Block, Schorr
& Solis-Cohen
S.E. Corner,
15th & Chestnut Streets
Packard Building, 12th Floor
Philadelphia, PA 19102

Attorneys for Appellees
Harry Stokes,
The French Co., Inc.,
Cynthia M. Maleski,
Insurance Commissioner
of the Commonwealth
of Pennsylvania

OPINION OF THE COURT

NYGAARD, Circuit Judge.

The issue before us is whether, in the face of a statutory insurer liquidation proceeding in the Pennsylvania Commonwealth Court, the district court properly stayed this action under the Burford abstention doctrine. We conclude that abstaining and retaining jurisdiction was proper, and hence we will affirm.

I.

The allegations of this case form a tangled web of intrigue, fraud and self-dealing. It suffices to say that Feige and Sechrest purchased Corporate Life Insurance Company and allegedly converted $11 million of its mortgage loan portfolio. Corporate Life sued them. Sechrest settled his case and was released from liability. Sechrest and Corporate Life then joined forces and sued Feige, seeking, inter alia, to have certain Feige-Sechrest entities dissolved.

Feige then filed this suit, alleging that Corporate Life

fraudulently misrepresented its assets to the Pennsylvania Insurance Department and falsely accused Feige and the Feige–Sechrest entities of converting Corporate Life's mortgage portfolio.  Shortly after the complaint was filed, however, the Pennsylvania Commonwealth Court directed the liquidation of Corporate Life and stayed all actions against it.  Cynthia Maleski, the Statutory Liquidator for Corporate Life, moved to stay this action under the Burford abstention doctrine.  The district court granted her motion, Feige v. Sechrest, 896 F. Supp. 403 (E.D. Pa. 1995), and this appeal followed.  We have appellate jurisdiction under 28 U.S.C.  1291, even though the district court departed from the traditional application of Burford abstention by staying the action rather than dismissing the complaint.  See Moses H. Cone Mem. Hosp. v. Mercury Construction Corp., 460 U.S. 1, 8–10 & nn. 8, 11, 103 S. Ct. 927, 933–34 & nn.8, 11 (1983); Richman Brothers Records, Inc. v. U.S. Sprint Communications Co., 953 F.2d 1431, 1442 (3d Cir. 1991), cert. denied, 505 U.S. 1230, 112 S. Ct. 3056 (1992); Hovsons, Inc. v. Secretary of the Interior, 711 F.2d 1208, 1211 (3d Cir. 1983); Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104, 108–09 (3d Cir. 1978).

## II.

We recently addressed the standard governing Burfordabstention:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"), 109 S. Ct. 2506, 2514–15 (1989)).  At this point in our jurisprudence, there can be little doubt that parallel federal and state proceedings would disrupt Pennsylvania's legislative framework for the liquidation of insolvent insurers.  See, e.g., General Glass v. Monsour Medical Found., 973 F.2d 197, 201 (3d Cir. 1992); Lac D'Amiante du Quebec, Ltee. v. American Home Assur. Co., 864 F.2d 1033, 1045 (3d Cir. 1988).  We therefore proceed to address the two substantial issues raised on this appeal: first, whether adequate state court review is available; and second, whether Burford abstention may be applied when, as here, the complaint contains claims for money damages.

## A.

Appellants argue that adequate state court review is not available because the Commonwealth Court has no jurisdiction over

the claims they assert in this action.  The district court disagreed, opining:

> Plaintiffs' claims against non-Corporate Life defendants, to the extent they do not arise under the Insurance Act, are not within the original jurisdiction of the Commonwealth Court.  Nevertheless, those involving the French Company and the Hearthstone bonds materially affect Corporate Life and are therefore a part of the Commonwealth Court action.  All of the claims against the principals of Corporate Life are derivative.  The remaining ones are against Sechrest for conversion of plaintiffs' assets and illegal litigation tactics by reason of his allegedly joining forces with Corporate Life.  These claims should be decided as part of the original dispute between Corporate Life and Feige-Sechrest or deferred until that dispute is resolved.

Feige, 896 F. Supp. at 405.

By statute, the Commonwealth Court has jurisdiction over all claims arising under the Insurance Act of 1921.  42 Pa. C.S. 761.  Because any claims against Corporate Life (since replaced by the Statutory Liquidator) arise under the Act, all or parts of counts III-VIII and X-XIII are subject to timely and adequate state court review.  Indeed, there is currently an ongoing proceeding in that court regarding the liquidation of Corporate Life.

Many of appellants' remaining counts (or portions of counts) are derivative actions against the directors of Corporate Life.  Because derivative claims are asserted on behalf of the corporation, and that corporation is undergoing statutory liquidation, they are bound up intimately with the liquidation proceeding and likewise arise under the Act.

That leaves the claims against Sechrest and The French Co., Inc. for breach of fiduciary duty (counts I & II), rescission (count V), civil conspiracy (count VII), abuse of process (count VIII), conversion (count IX), tortious interference (count XI) and indemnity (count XIII).  Although these claims are certainly related to the statutory liquidation of Corporate Life, appellants argue that they are no more than garden-variety torts which do not arise under the Insurance Act and are not inextricably bound up with the liquidation.  Under appellants' theory, these claims belong not in the Commonwealth Court, but in the Court of Common Pleas, a court where there is currently no pending proceeding.  Thus, they argue, the liquidation proceedings will not provide an adequate forum in which to resolve their claims.  This argument, however, is belied by the fact that appellants have asserted a cross-claim against appellee Sechrest in the Commonwealth Court action, Maleski v. DP Realty Trust, raising most of the same counts listed above.

It is clear that the Commonwealth Court has jurisdiction over counterclaims.  See Commonwealth v. Frank Briscoe Co., 466 A.2d 1336, 1340 (Pa. 1983).  Based on that case, appellees assert that there is jurisdiction over cross-claims as well.  A case

they omit from their brief, however, appears on first inspection to require a contrary result. In Commonwealth v. Joseph Bucheit & Sons, 483 A.2d 848 (Pa. 1984), the Commonwealth brought an action against a contractor in Commonwealth Court. Defendant counterclaimed against the state and sought to join a steel supplier as an additional defendant. Another defendant then filed a cross-claim against the first defendant. The supreme court held that, while the counterclaim was within the jurisdiction of the Commonwealth Court, the other claims were not, limiting the reasoning of Frank Briscoe to the context of counterclaims. Accordingly, if Joseph Bucheit is controlling authority, the Commonwealth Court has no jurisdiction over appellants' cross-claims.

We do not believe that Joseph Bucheit stands for the broad proposition that the Commonwealth Court has no jurisdiction over cross-claims. That case was decided under 42 Pa. C.S. 761(a)(2) (jurisdiction of actions brought by the Commonwealth), not 761(a)(3) (actions arising under the Insurance Act). In fact, the Joseph Bucheit court stated specifically that the involvement of the Commonwealth as a party was key to its decision:

> The spectre of the Commonwealth awaiting final judgment in a case where its own right to recovery has been established, while numerous general contractor and subcontractor defendants and additional defendants seek to shift ultimate responsibility among themselves, is sufficient to counsel the conclusion that the holding in Briscoe must not be extended beyond its facts.

483 A.2d at 851.

Jurisdiction in this action, however, is based on the Liquidator's case arising under the Insurance Act, as the Commonwealth Court has already held. See Maleski v. DP Realty Trust, 653 A.2d 54, 65 (Pa. Commw. Ct. 1994). As that court stated:

> Section 221.26 of the Insurance Act provides that the "liquidator may [. . .] institute an action or proceeding on behalf of the estate of the insurer upon any cause of action" for which the statute of limitations have [sic] not expired. Additionally, Section 221.28 of the Insurance Act permits the liquidator to avoid fraudulent transfers made by the insurer [. . .], and Section 221.23 of the Insurance Act authorizes the liquidator to "collect all debts and money due and claims belonging to the insurer. Because this Court is expressly vested with "the original jurisdiction of all civil actions or proceedings arising under Article V of the Insurance Act, and since the Complaint, filed by the Statutory Liquidator of Corporate Life, alleges causes of action on behalf of Corporate Life and also seeks to recover fraudulently obtained assets, it arises under Article V of the Insurance Act. Accordingly, this Court has original

jurisdiction over the claims.

Id.

Here, of course, it is not the Statutory Liquidator who is bringing the action, but Feige. Nevertheless, a major part of what Feige is seeking through this litigation is to rescind the asset transfer made by Sechrest to the estate of Corporate Life. If Feige prevails, the effect of the judgment will be to remove those assets from the estate and affect directly and adversely what the Liquidator is attempting to achieve through her proceedings: the protection of the policyholders. Thus, even though this case appears on the surface to involve "garden-variety" torts committed by private parties, we conclude that it, too, arises under the Insurance Act. Accordingly, the Commonwealth Court has jurisdiction over the claims, which leads inexorably to the conclusion that there is adequate state court review for purposes of Burford abstention.

## B.

Before we conclude that Burford abstention was applied correctly, however, we must also confront the fact that the vast majority of the claims asserted by appellants are legal in nature and seek only money damages. Of thirteen counts pleaded in their complaint, only counts V (rescission), VI (declaratory judgment), and counts IX and X (seeking injunctive relief for defendants' alleged conversion) are not solely legal in nature. The district court believed that "[t]he essence of the action is that the combination formed by Corporate Life and Sechrest against Feige should be set aside and penalized. These are matters that obviously sound in equity." Feige, 896 F. Supp. at 406. We will affirm, but on a different ground.

### 1.

Whether Burford abstention may be applied in cases where other than equitable relief is sought has been the source of some confusion in our caselaw. In Baltimore Bank, we held that Burford was not available in an action at law. 583 F.2d 111-12. A decade later, in Lac D'Amiante du Quebec, Ltee. v. American Home Assur. Co., 864 F.2d 1033 (3d Cir. 1988), we permitted Burford abstention in a case where declaratory relief was sought, opining in dictum that "a refusal to abstain simply because the federal court is not sitting in equity makes no sense." Id. at 1044. Then, a few years later, we reaffirmed the holding of Baltimore Bank in University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265 (3d Cir. 1991), denying abstention in a case where legal relief was sought. Id. at 271-72.

A year later, however, another panel of this court reached the opposite result in another insurance abstention case. In General Glass Indus. Corp. v. Monsour Med. Foundation, 973 F.2d 197 (3d Cir. 1992), the panel read the Lac D'Amiante dictum together with Tafflin v. Levitt, 493 U.S. 455, 110 S. Ct. 792 (1990), in which the Supreme Court appeared to uphold sub silentio the application of Burford to an action at law. Concluding that the decisional authority was inconclusive, it interpreted University of Maryland as only "intimating" that Burford abstention was not available in legal actions and

partially affirmed the district court's application of abstention.  Id. at 202.

More recently, in Riley v. Simmons, we held that Burfordabstention was improper, but the panel was divided as to the rationale for the decision.  The opinion writer, speaking only for himself, believed that abstention was not available because there was no adequate opportunity for state court review of plaintiffs' securities claims, which were subject to exclusive federal jurisdiction.  See 45 F.3d at 777.  The concurrence, on the other hand, expressed the view that Burford cannot be applied to actions at law, rejecting General Glass and relying on Baltimore Bank and University of Maryland.  Id. at 777–79 (Nygaard, J., concurring).  A district judge, sitting by designation, concurred in the result without explanation.  Id. at 766 n.2

2.

After this case was briefed and argued before us, the Supreme Court handed down an opinion that settles the issue.  In Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712 (1996), the California Insurance Commissioner sued Allstate in state court seeking damages in contract and in tort for Allstate's alleged breach of its reinsurance agreements.  Allstate removed the case to federal district court and sought an order compelling arbitration.  The Commissioner then moved for a remand to state court under Burford.  The district court granted the motion and dismissed the complaint.  See id. at 1717.  On appeal, the Ninth Circuit reversed, holding that Burford abstention cannot be granted in any form when the relief sought is solely legal in nature.  Garamendi v. Allstate Ins. Co., 47 F.3d 350, 354–56 (9th Cir. 1995).

The Supreme Court affirmed.  It noted that "the power to dismiss under the Burford doctrine, as with other abstention doctrines, . . . derives from the discretion historically enjoyed by courts of equity."  116 S. Ct. at 1726.  Because such remedies have historically been committed to the chancellor's discretion,

in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court.  By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.

Id. at 1723.  The granting of legal remedies provided by applicable law and proven as a factual matter has not traditionally been subject to the court's discretion.  Accordingly, given the "virtually unflagging obligation to exercise the jurisdiction given them" by Congress, see Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 821, 96 S.Ct. 1236, 1248 (1976), a district court may not abstain under Burford and dismiss the complaint when the remedy sought is

legal rather than discretionary. Quackenbush, 116 S. Ct. at 1727. To the extent, then, that General Glass held that Burfordabstention may be applied to dismiss a complaint in an action at law, it has been overruled by Quackenbush.

In the present case, however, while the district court abstained under Burford, it stayed the action rather than dismiss the complaint. In Quackenbush, the Supreme Court indicated in dictum that such a course is proper:

> Unlike the outright dismissal or remand of a federal suit, . . . an order merely staying the action "does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition."

Id. at 1723 (quoting Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 29, 79 S.Ct. 1070, 1073 (1959)). Thus, the Court continued:

> In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded; that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether[.]
>
> The per se rule described by the Ninth Circuit is, however, more rigid than our precedents require. We have not strictly limited abstention to equitable cases, but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief. Moreover, as demonstrated by our decision in Thibodaux, we have not held that abstention principles are completely inapplicable in damages actions. Burford might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law.

Id. at 1727-28 (citations and internal quotation marks omitted).

We think the district court's stay order was entirely appropriate. Rather than abdicate its judicial duty to exercise its jurisdiction, the district court simply postponed the exercise of that jurisdiction until the proceedings in the Commonwealth Court reach their conclusion. This approach retains the sensitivity for concerns of federalism and comity implicated by Burford abstention, while preserving appellants' right to litigate their claims in the federal forum should the Pennsylvania courts, for jurisdictional or other reasons, fail to adjudicate them. The entry of a stay rather than a dismissal prevents those claims from becoming time-barred should jurisdiction be somehow lacking in the Commonwealth Court, and the preclusion doctrines of res judicata and collateral estoppel will prevent their re-litigation in the more likely event that court proceeds to judgment.

III.

We will accordingly affirm the order of the district court.