# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

FIRST PENN-PACIFIC LIFE INSURANCE
COMPANY,

*Plaintiff-Appellant,*

v.

WILLIAM R. EVANS, Chartered;
MARYLAND FIRST FINANCIAL SERVICES
CORPORATION,

*Defendants-Appellees.*

MARYLAND SECURITIES COMMISSION,

*Amicus Curiae.*

No. 01-2218

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-01-680-H)

Argued: May 7, 2002

Decided: September 18, 2002

Before WILKINSON, Chief Judge, and NIEMEYER and
LUTTIG, Circuit Judges.

___

Affirmed by published opinion. Chief Judge Wilkinson wrote the
majority opinion, in which Judge Niemeyer joined. Judge Luttig
wrote a dissenting opinion.

___

## COUNSEL

**ARGUED:** Derek Barnet Yarmis, FUNK & BOLTON, P.A., Balti-
more, Maryland, for Appellant. Paul Stephen Caiola, GALLAGHER,

EVELIUS & JONES, L.L.P., Baltimore, Maryland, for Appellee Maryland First Financial Services Corporation. Lucy Adams Cardwell, Assistant Attorney General, Baltimore, Maryland, for Amicus Curiae. **ON BRIEF:** Lee Ann Lezzer, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellant. Thomas C. Dame, GALLAGHER, EVELIUS & JONES, L.L.P., Baltimore, Maryland, for Appellee Maryland First Financial Services Corporation. J. Joseph Curran, Jr., Attorney General of Maryland, Katharine M. Weiskittel, Staff Attorney, Baltimore, Maryland, for Amicus Curiae.

---

## OPINION

WILKINSON, Chief Judge:

First Penn-Pacific Life Insurance Company sought rescission of a life insurance policy, alleging fraud. Maryland First Financial Corporation intervened as the receiver for Answer Care, Inc., a viatical settlement company, because the policy was a claimed asset of the receivership estate. The receiver filed a motion to dismiss, arguing that *Burford* abstention was appropriate to avoid interfering with the receivership proceedings pending in state court. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The district court agreed and dismissed the case. Because the district court's ruling was not an abuse of discretion, we affirm.

### I.

First Penn-Pacific Life Insurance Company sued William R. Evans, Chartered in federal district court, seeking rescission of a life insurance policy. The insurer issued the policy to Stanley Moore in January 1998, and Moore assigned it to Evans two months later. First Penn-Pacific alleged that in applying for the policy, Moore fraudulently misrepresented material facts regarding his family circumstances, his health, and the amount of other life insurance that he owned. The insurer further claimed that the policy was invalid because it was not purchased to protect a legally insurable interest. First Penn-Pacific asked the district court to declare the policy void *ab initio*.

Evans served as escrow agent for Answer Care, Inc. Answer Care had been engaged in consummating "viatical settlements." It would solicit investors to purchase interests in life insurance policies issued to individual "viators" who were diagnosed as having terminal illnesses after being issued the policies. Evans owned bank accounts holding the funds of Answer Care's investors, and owned the policies purchased by the investors.

Pending in the Circuit Court for Baltimore City is an action brought by the Maryland Securities Commissioner against Answer Care and Mark Massoni, its owner and president. *See Lubin v. Answer Care, Inc.*, Case No. 24-C-00-004710 (Cir. Ct. Balt. City). The Commissioner alleged that Answer Care: (1) sold securities in violation of the Maryland Securities Act, Md. Code Ann., Corps. & Ass'ns, § 11-101 *et seq.*; (2) committed fraud by selling interests in life insurance policies that were obtained through fraudulent applications, and that were canceled by insurers because of this fraud; and (3) had no independent escrow agent to manage the policies sold to investors. The Commissioner sought an injunction, the appointment of a receiver, restitution, and civil penalties.

The Circuit Court froze Answer Care's assets, enjoined the company from selling interests in life insurance policies, and appointed Maryland First Financial Corporation to be the receiver for Answer Care. The court directed the receiver to manage Answer Care's businesses for the purpose of protecting and distributing its assets. The receiver was authorized to recover assets for investors by filing claims against insiders, recipients of preferential treatment, and those who illegitimately received investor funds.

In addressing the question of the beneficial ownership of the life insurance policies at issue, the Circuit Court appointed counsel to represent the interests of Answer Care's investors. Counsel was directed to argue that the ownership of the policies, and the refunded premium payments for canceled policies, should be apportioned among the investors who had been promised a share of the policies' death benefits. Likewise, the receiver argued below that the instant policy's $2,000,000 in death benefits (or its refunded premiums) should go to Answer Care's creditors, and to paying the expenses associated with administering the estate.

After the district court granted its motion to intervene, the receiver filed a motion to dismiss, arguing that *Burford* abstention was necessary to avoid interfering with the receivership proceedings in the Circuit Court. The receiver claimed that continuing this action would undermine the integrity of several Circuit Court orders, and would hinder its efforts to distribute Answer Care's assets. It further asserted that the state's interests were paramount, that the instant policy was a substantial asset of the receivership estate, and that the state had initiated a comprehensive scheme for administering all of Answer Care's assets.

First Penn-Pacific responded that abstention was inappropriate because *Burford* applied only when a federal case would interfere with proceedings or orders of a state administrative agency. The insurer asserted that the Commissioner's action against Answer Care was merely litigation between private parties, not a proceeding of a state agency. It claimed that the district court was obligated to hear the case because Maryland had yet to set up an administrative scheme directly addressing viatical settlements.

The district court agreed with the receiver that *Burford* abstention was appropriate to avoid interfering with the state receivership proceeding. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1192 n.16 (4th Cir. 1988). It thus dismissed the complaint without prejudice. First Penn-Pacific appeals.

II.

A.

We may not disturb a district court's decision to abstain under *Burford* unless we find an abuse of discretion. *See Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1324 (4th Cir. 1994); *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250-51 (4th Cir. 1993); *Brandenburg*, 859 F.2d at 1195. That standard is a deferential one. A district court ruling may be a permissible exercise of discretion, even if an appellate court suspects that it might have

ruled otherwise in the first instance. Thus mindful of the standard of review, we proceed to the analysis of the trial court's decision.[1]

B.

As the district court recognized, a federal court's exercise of discretion in deciding whether to invoke *Burford* abstention "must reflect principles of federalism and comity." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotation omitted). These constitutional commitments require federal courts to "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318 (internal quotation omitted). Courts should abstain from deciding cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or whose adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). Abstention is also "the exception, not the rule." *Colorado River*, 424 U.S. at 813.

The Supreme Court's decisions "do not provide a formulaic test for determining when dismissal under *Burford* is appropriate." *Quackenbush*, 517 U.S. at 727. Nevertheless, the general concern that should inform a federal court's discretion is clear enough:

> Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the "independence of state action," *Burford*, 319 U.S., at 334, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum.

---

[1]To read the dissent, one would think that *Burford* abstention was a "require[ment]" in this case. *Post* at 10. Our holding is simply that the district court did not abuse its discretion in abstaining here.

*Id.* at 728.

### III.

In view of this governing law, we cannot conclude that the district court abused its discretion in declining to exercise its jurisdiction over this case. As in *Brandenburg*, this dispute implicates an entity placed into receivership by order of a state court. In concluding that *Brandenburg* "present[ed] a classic situation for *Burford* abstention," we relied upon the fact that Maryland had set up a comprehensive scheme for liquidating insolvent state-chartered savings and loan associations, and that rehabilitating the industry was indisputably a matter of substantial state concern. 859 F.2d at 1191. Though Answer Care was not a savings and loan, it nevertheless is subject to a highly regulated state process involving the liquidation of its assets.

The Commissioner is the principal executive officer of the Maryland Division of Securities. She is vested with the authority to enforce the Maryland Securities Act. § 11-201. The Act authorizes the Commissioner to bring an action in state court whenever any person has violated or is about to violate the Act or its implementing regulations. The Commissioner may, as she did in the Circuit Court here, seek injunctive relief, civil penalties, and the appointment of a receiver or conservator for the defendant or the defendant's assets. *See* § 11-702. The Circuit Court's decisions are appealable. *See* Md. Code Ann., Courts & Judicial Proceedings, § 12-101 *et seq.*

When the Commissioner asks the state court to appoint a receiver, she typically requests, as she did here, that the receiver be given all of the powers and responsibilities set forth in Title 13 of the Maryland Rules. Under Rule 13-101, the receiver is appointed by the court to administer the debtor's estate. Title 13 further provides that the receiver: (1) shall mail a notice to creditors, Rule 13-202; (2) may settle claims relating to the estate with the court's approval, Rule 13-403; (3) shall file reports with the court, Rule 13-501; and (4) shall make a final distribution to creditors, Rule 13-503.

The district court reasonably viewed this highly regulated state process to be "a matter of substantial public concern." *NOPSI*, 491 U.S. at 361 (quoting *Colorado River*, 424 U.S. at 814). The receivership

proceeding in the Circuit Court resulted from a securities fraud of significant proportions. As stated in the order granting appointment of a receiver, the Commissioner forced Answer Care into receivership "to prevent the risk of further loss of investor funds, to protect the public interest and to avoid the harm that will result from a continuing violation of the Maryland Securities Act." The state has a substantial interest in preventing further harm to the public, and in providing investors with some compensation so that the scam does not leave them completely high and dry.

Allowing this action to continue in federal court would severely complicate the efficient dissolution of Answer Care's estate. We would be inviting litigation in fora all around the country over other Answer Care policies that may come under attack. Sprinkling these disputes all over the place constitutes an inefficient way to handle the significant public problem that Answer Care's fraud has created. The receiver's funding to cover such litigation expenses comes from the estate itself. And as the litigation and administrative costs mount, the size of Answer Care's assets shrinks. If the receiver is forced to defend in fora around the nation, the time may come when the victims of the company's fraud will not be able to obtain their due.

Our dissenting brother does not dispute the district court's judgment that major inefficiencies, inconsistencies, and depletions of the receivership estate would be caused by litigating individual actions at different points around the country. This economic reality informs our view that "[t]he liquidation process in particular is one which would be greatly impeded by the involvement of more than one decision-making authority." *Brandenburg*, 859 F.2d at 1191.[2] And it is a critical reason why federal courts have frequently abstained to avoid interfering with state receivership proceedings. *See Clark v. Fitzgibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997) ("[P]ermitting these plaintiffs to proceed in federal court in Texas would start a race to the courthouse in any jurisdiction where claims against ABC might have arisen. The administrative structure established by Arizona to rehabilitate or liqui-

---

[2]To extract from the rather specialized setting of state receivership proceedings the notion that *Burford* abstention would be "required in virtually every diversity case by today's opinion," *see* dissenting opinion, *post* at 10, goes beyond hyperbole.

date insolvent insurers would swiftly crumble."); *cf. Charleston Area Med. Ctr. v. Blue Cross & Blue Shield Mut. of Ohio*, 6 F.3d 243, 250 n.5 (4th Cir. 1993) ("[A receivership case that implicates a complex state statutory scheme] presents precisely the type of litigation in which federal courts should carefully consider abstaining."). Such cases are legion. *See, e.g.*, *Feige v. Sechrest*, 90 F.3d 846 (3d Cir. 1996); *Wolfson v. Mut. Ben. Life Ins. Co.*, 51 F.3d 141 (8th Cir. 1995); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir. 1988); *Law Enforc. Ins. Co. v. Corcoran*, 807 F.2d 38 (2d Cir. 1986); *Easter v. Am. West Fin.*, 202 F. Supp. 2d 1150 (W.D. Wash. 2002); *Rewerts v. Reliance Ins. Co.*, 170 F. Supp. 2d 847 (C.D. Ill. 2001); *In re Universe Life Ins. Co.*, 35 F. Supp. 2d 1297 (D. Kan. 1999).

Federal courts also have abstained in such situations to allow for the consistent dissolution of the receivership estate. The district court permissibly concluded that continuing this action would be inappropriate because it would infringe upon orders previously entered by the Circuit Court. *See id.* at 1192. The Circuit Court enjoined Answer Care from impairing any assets obtained with funds that came from the sale of viatical settlements. It further ordered the receiver to protect and recover Answer Care's assets through whatever steps were necessary. In addition, the court ordered all parties before it to brief the issue of who had the beneficial ownership of the life insurance policies at issue. And in a scheduling order, the receiver was directed to file in the Circuit Court "any claims it intends to pursue related to the pending receivership" because the court "intends to accept special assignment of all claims related to the receivership."

Further, the Commissioner brought to our attention in her Brief as *Amicus Curiae* that a conflict between the Circuit Court and district court proceedings has already arisen. First Penn- Pacific argued below that the receiver had no legal interest in the policy in question and thus no right to intervene. The Circuit Court later concluded, however, that the receiver was the beneficial owner of all policies sold through Answer Care. Regardless of the resolution of this issue on appeal, it shows that the present situation is rife with the potential for conflict.

More generally, litigants quite possibly could bring the same claims controlled by the same state's law, and yet come away with

different results, as various courts might see things differently. In terms of the money that Answer Care's investors hope to recover, it matters a great deal whether a given policy is valid, in which case they are entitled to the death benefits, or whether it is invalid, in which case they will only obtain the refunded premium payments. Thus, the district court acted within its discretion in abstaining to avoid "disrupt[ing] the state's efforts to provide a unified method for . . . liquidation." *Brandenburg*, 859 F.2d at 1191; *see also Quackenbush*, 517 U.S. at 717-18.

Relying upon *NOPSI*, First Penn-Pacific claimed below that *Burford* abstention should be invoked only to avoid interfering with an ongoing state administrative proceeding. However, the Circuit Court proceeding was brought by the Commissioner in her capacity as head of a state administrative agency, and it resulted in orders being issued against the company at her request. Assuming arguendo that *Burford* abstention is limited to cases involving the proceedings and orders of state administrative agencies,[3] the Answer Care receivership case is such a proceeding because it was brought by a state agency. First Penn-Pacific sought to avoid *Burford* in the court below by mischaracterizing the receivership action as a private dispute over a viatical settlement company's conduct. But as the district court found, that action "is in fact a proceeding instituted by a state agency to enforce state securities and insurance laws pertaining to the issuance, assignment and sale of life insurance policies."

Finally, it is relevant that the relief previously obtained by the Commissioner was granted by the Circuit Court pursuant to state law, and that relief is being administered in accordance with the Maryland Securities Act and state receivership procedures. State law also controls the instant dispute over the validity of a policy that may be a substantial asset of the receivership estate. Similarly, Answer Care's business involved the insurance industry, which the states are primar-

---

[3]The Supreme Court in *NOPSI* did discuss *Burford* abstention in the context of state administrative proceedings, but the Court has since addressed *Burford* abstention in the absence of a state administrative proceeding. *See Quackenbush*, 517 U.S. at 723-31. Indeed, the *Quackenbush* Court omitted the reference to state administrative proceedings in quoting the relevant passage from *NOPSI*. *See id.* at 726-27.

ily responsible for regulating. *See* 15 U.S.C. § 1011. Although hardly dispositive in itself, the largely local and highly regulated character of this industry further counsels us to respect the Circuit Court receivership proceeding. *See, e.g.*, *Burford*, 319 U.S. at 318-20, 327-34.

### IV.

In sum, the district court's ruling here was not an abuse of discretion. Its judgment is

*AFFIRMED*.

LUTTIG, Circuit Judge, dissenting:

As I have written previously, I believe that in recent years our Circuit has progressively charted its own course in the area of federal court abstention, a course quite different from that required of us by congressional statute and by Supreme Court precedent. *See Johnson* v. *Collins Entertainment Co.*, 199 F.3d 710, 730 (1999) (Luttig, J., concurring in judgment) (explaining that the majority, though reaching the correct result, worked a substantive change in the law of abstention). This case, decided by the same panel that decided *Johnson*, highlights well just how far my colleagues have gone in converting what is intended as "an extraordinary and narrow exception" to our duty to decide cases otherwise properly before us, *Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal citations omitted), into almost a rule of obligatory federal abstention, independent of whether there exists either an imperative or peculiar need for state court adjudication. For, at least on a principled application, *Burford* abstention would be required in virtually every diversity case by today's opinion, a result supported by no authority, not even those in our Circuit, and certainly none of those relied upon by the majority.

In the precedents that are relied upon by my colleagues, the presented issue was one already pending in some department within a comprehensive state regulatory scheme comprised of "a variety of legislative, administrative and judicial mechanisms," *Johnson*, 199 F.3d at 715, that was created in response to something like "as thorny a problem as has challenged the ingenuity and wisdom of legisla-

tures," *Burford* v. *Sun Oil Co.*, 319 U.S. at 318, 324 (1943) (grants of permits for drilling of oil fields in Texas, where "an additional permit may affect pressure on a well miles away"), to "a state of public crisis," that necessitated an emergency legislative session, *Brandenburg* (state's savings and loan industry), or to "arguably . . . the most hotly contested issue in [that particular state] in recent years," *Johnson*, 199 F.3d at 715 (video poker). And, in all of these cases, the issue was "imbued with sufficient local character that the state courts ought [have been] accorded comity from the federal courts with respect to its regulation." *Johnson*, 199 F.3d at 731 (Luttig, J., concurring in judgment). Neither of these *sine qua non* for federal abstention exists in the case before us today. Indeed, this is as garden-variety a diversity case as one could imagine, indisputably requiring, under statute and established Supreme Court caselaw, federal court adjudication.

Betraying the dearth of authority available to support the court's broad-gauged expansion of *Burford*'s limited exception, the majority portrays this case as closely analogous to *Brandenburg* v. *Seidel*, 859 F.2d 1179 (4th Cir. 1988). The actual facts underlying our decision in *Brandenburg* reveal that that case is anything but support for the majority's conclusion; indeed, if anything, *Brandenburg* is affirmative authority for precisely the opposite conclusion from that reached by the majority. As we explained in *Brandenburg*, there, the Governor of Maryland, in response to a panic that threatened to lead to the collapse of the state's savings and loan industry, literally declared a state of public crisis; issued an executive order limiting withdrawals to $1,000 per account per month from all Maryland Savings-Share Insurance Corporation institutions; and called the Maryland General Assembly into an emergency session. The Assembly in turn enacted a package of legislation, establishing "a comprehensive framework for the administration of conservatorship and receivership proceedings for insolvent savings and loan associations." *Brandenburg*, 859 F.2d at 1182. That legislation created a state-operated deposit insurance fund, the Maryland Deposit Insurance Fund, which had "exclusive and plenary jurisdiction over all claims, actions, and proceedings . . . brought by any person and . . . related to the assets, property, powers, privileges, duties and liabilities" of the savings and loan institution in question. As we observed, that legislation was "designed to

deal comprehensively with the crisis in the state's savings and loan industry." *Id.*

By contrast, the receivership here is of the most unexceptional kind. It did not arise out of a public crisis, though Maryland certainly knows how to declare one, and it certainly is not the product of special legislative session. Neither did it originate from a distinct and comprehensive mechanism created to address the problem of viatical settlement fraud that faces the Answer Care receivership. As the majority correctly (though inconsistently with its own conclusion) remarks, this receivership is governed by Title 13 of the Maryland Rules of Court, which applies to virtually all receivership proceedings, *see* Md. R. Ct. 13-102, legislation the like of which is commonplace in every state in the Union. And, unlike the threat represented by the imminent collapse of the entire savings and loan industry, which was addressed by the legislation in *Brandenburg*, viatical settlement fraud, though no doubt a problem, has not prompted any heated public debate at all, much less any of the type which, in turn, gave rise to "the complex administrative system that [the state] had established," in *Burford*, whose very purpose was being threatened by parallel federal litigation. *Compare with Burford*, 319 U.S. at 332 ("The whole cycle of federal-state conflict cannot be permitted to begin again.").

By holding that the receivership we consider in this case is, for purposes of *Burford* abstention, analogous to the one in *Brandenburg*, and hence, that abstention is warranted, the majority has, as I predicted in *Johnson*, all but completed its transformation of *Burford*'s exception to decision into an exception to abstention, in open departure from our "virtually unflagging obligation . . . to exercise [the] jurisdiction" conferred upon us by Congress, *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 821 (1976). *See Johnson*, 199 F.3d at 730 (Luttig, J., concurring) (noting that the majority was affecting "a substantive change in the law of abstention from a doctrine of exception to a doctrine of rule"). Such is the ineluctable consequence of the elevation of a state's everyday interest in "preventing further harm to the public, and in providing investors with some compensation so that the scam does not leave them completely high and dry" to a "substantial" interest for abstention purposes, *ante* at 7, and of the countenance of abstention on nothing

more than the mere (and unidentified) potential for conflict with state regulatory law or policy.

As Congress has required by statute, and the Supreme Court has required by decision, I would require the district court to decide this dispute, which was properly before that court for decision. There is no imperative or peculiar need for state court adjudication. Although it has again fallen on deaf ears, I can only repeat what I said in *Johnson*: "It is not our[ duty] either to interpret the [jurisdictional] statute narrowly or to expand our own judicial engraftations because we disagree with the Congress that our doors should be open to such disputes." *Johnson*, 199 F.3d at 729 (Luttig, J., concurring in judgment).