

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2003

# MacNamara v. Hess

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2049

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"MacNamara v. Hess" (2003). *2003 Decisions.* Paper 472.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/472

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2049

STEVEN A. MACNAMARA; LORIE A. MACNAMARA;
BLAZER ENTERPRISES, INC.,
Appellants

v.

DAVE HESS; TROOPER WERNER; TROOPER ALBAUGH; NELS J. TABER; TROOPER
JANE DOE; CHERYL PETERS; SUSAN HORN

Appeal from the United States District Court
for the Middle District of Pennsylvania
(CV-99-1557)
District Judge: Honorable James F. McClure, Jr.

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2003

Before: BECKER, Chief Judge[*] and SCIRICA, Circuit Judges[**]
SHADUR,[***] District Judge

---

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**]Judge Scirica began his term as Chief Judge on May 4, 2003.

[***] Honorable Milton I. Shadur, United States District Court Judge for the Northern
District of Illinois, sitting by designation.

OPINION OF THE COURT

SHADUR, District Judge:

Steven A. MacNamara and Lorie A. MacNamara (collectively "MacNamaras") and their company Blazer Enterprises Inc. ("Blazer") brought suit under 42 U.S.C. §1983 ("Section 1983"), alleging violations of their First, Fourth and Fourteenth Amendment rights[1] by present and former employees of the Commonwealth of Pennsylvania: former Deputy Secretary for Policy and Communications for the Department of Environmental Protection ("DEP") David E. Hess ("Hess"), retired state trooper John A. Werner ("Werner"), state trooper Curtis Albaugh ("Albaugh"), DEP Regional Counsel Nels J. Tabor ("Tabor") and former employees of the Department of Transportation ("DOT") Cheryl Peters ("Peters") and Susan Horn ("Horn").[2] On December 28, 1999 the district court granted in part a Fed. R. Civ. P. ("Rule") 12(b)(6) motion by defendants, dismissing plaintiffs' Fourth-Amendment-based claim as untimely. Thereafter the defendants other

---

[1] As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to underlying Bill of Rights provisions (which of course impose limitations only on the federal government) rather than solely to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

[2] Plaintiffs' Amended Complaint substituted Horn for the "unknown agent Jane Doe" named in the original Complaint.

than Horn filed a Fed. R. Civ. P. ("Rule") 56 motion seeking judgment as to all of plaintiffs' remaining claims, and the parties tendered submissions supporting and opposing that motion.

On April 10, 2002 the district court granted the summary judgment motion in its entirety--but because that left open the claims against remaining defendant Horn, the court's order also directed plaintiffs to take some action in that respect. Instead plaintiffs responded by filing this appeal on April 16, 2002 without taking any action as to Horn.[3] On May 14, 2002 the complaint against Horn was dismissed with prejudice for want of prosecution, and final judgment was entered in favor of all defendants. We affirm the district court in all respects.

## Standard of Review

We review the district court's grant of both the motion to dismiss and the motion for summary judgment de novo, applying the same standards as did the district court (In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1322-33 (3d Cir. 2002); Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000)). As for Rule 12(b)(6), Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) explains that a court "may dismiss a complaint only if it is clear that no relief

---

[3] Although plaintiffs' notice of appeal was thus filed before the entry of final judgment and while their claim against Horn was still pending, our jurisdiction is proper because of the later order referred to in the next sentence of the text (see, e.g., Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 585-87 (3d Cir. 1999)). Here as in Lazy Oil the district court disposed of the remaining issue and entered final judgment before our consideration of the case, and no prejudice is asserted by either party. In accordance with the teaching of Lazy Oil and the earlier decision in Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184-85 (3d Cir. 1983), we have jurisdiction pursuant to Fed. R. App. P. 2.

could be granted under any set of facts that could be proved consistent with the allegations." And as to Rule 56, defendants as movants have the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). In that respect Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986) teaches:

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Finally, on the appellate review of both motions, we (like the district court) are required to draw all reasonable inferences in the light most favorable to nonmovant plaintiffs (NAHC, 306 F.3d at 1322-23; Greunke, 225 F.3d at 298).

We turn then to the factual background against which both motions are to be resolved. What follows is drawn from the parties' submissions under the just-outlined standards. Hence we omit such language as "plaintiffs assert" or the like, because we have credited plaintiffs' properly supported allegations together with the required favorable inferences.

## Background

About September 28, 1996 Horn, then a DOT employee, stopped one of plaintiffs' trucks and incorrectly reported certain hauling violations. When plaintiffs complained to DOT, the problems with that report were eventually resolved. After that initial incident, however, plaintiffs' trucks continued to be stopped and harassed by DOT officials. On

4

August 18, 1997[4] Peters, with the assistance of a Commonwealth trooper, stopped one of plaintiffs' trucks and told the driver that she would stop every green Blazer vehicle that she saw. Nonetheless, plaintiffs have identified no further stops.

Meanwhile, on May 7 Trooper Albaugh had applied for a search warrant for plaintiffs' office and the MacNamaras' personal residence. In his affidavit of probable cause, Albaugh stated that he had learned from the DEP that Blazer was hauling wheat destined for flour mills in tractor trailers that had previously been used to haul "car fluff"--nonmetallic material, removed from demolished automobiles, that constitutes "residual waste" under Pennsylvania's Solid Waste Management Act (35 Pa. Cons. Stat. Ann. §6018.103). Relying in part on evidence obtained from the September 28, 1996 stop by Horn, Albaugh believed that plaintiffs had violated 75 Pa. Cons. Stat. Ann. §4909(a)(1), which prohibits the transportation of foodstuffs intended for human consumption in vehicles used to transport waste.

Later that day the warrant was executed by Albaugh and Werner along with other Commonwealth police officers and DEP agents. Plaintiffs' office and the MacNamaras' home were searched and business records were seized. Plaintiffs complained to various officials about the search, contending that they had not violated the Pennsylvania statute because the food that they were hauling was for animal rather than human consumption.

In response plaintiffs received a phone call from Hess, who assured them that there

---

[4] Because the other relevant events that triggered this lawsuit also took place during 1997, all dates referred to without a year designation are from that year.

5

would be no prosecution against them. Despite that assurance, on May 28 Tabor sent plaintiffs a proposed plea agreement for alleged violations of the statutory prohibition. That agreement was rejected by plaintiffs at a June 2 meeting with Tabor, Albaugh and Werner. At that time plaintiffs reiterated their position that they did not violate the statute and further stated that the DEP regulation that prohibits hauling animal feed in trailers previously used to haul residual waste (25 Pa. Code §285.219(a)) did not have authority of law. Even though plaintiffs refused to sign the plea agreement, no charges were ever filed against them.

Werner attempted to return plaintiffs' business records to them on August 27, but because plaintiffs insisted on looking through all of the records before acknowledging their receipt, the records were not exchanged at that time. On September 26 Werner met with Steven MacNamara at the office of plaintiffs' attorney and returned the records, although defendants have retained and have refused to return copies of some of the records.

Plaintiffs filed their Complaint on April 26, 1999, alleging that an unknown agent (later identified as Horn) had falsely cited one of their trucks, that the searches of the home and office and the seizure and detention of the business records had lacked probable cause and that the stoppage of their trucks had been without any legitimate reason. As stated earlier, those claims appeared to be based upon the First, Fourth and Fourteenth Amendments.

Even though the district court did dismiss the Fourth-Amendment-based claims at an early stage as barred by limitations, it initially denied defendants' motion to dismiss

6

plaintiffs' substantive due process claim because the Complaint was ambiguous as to when the last act of harassment that would support that claim had occurred.  But after reviewing the record at the summary judgment stage, the district court held alternatively (1) that the due process claim was also out of time and (2) that plaintiffs had not been deprived of a fundamental property interest, nor was defendants' conduct egregious in nature.  Before us plaintiffs argue that their Complaint was timely filed, that their due process claim was meritorious and that the district court erred in failing to address their claim of retaliation under the First Amendment.

Statute of Limitations

As Gruenke, 225 F.3d at 298 has explained, "[t]o state a claim under §1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived [him or] her of a federal constitutional or statutory right."  Thus Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right" (id.).

Whatever the specifics of the allegations, however, it is well established that the states' statutes of limitations for personal injury actions apply to all actions brought under Section 1983 (Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).  Hence Pennsylvania's two year statute of limitations for such claims, set out in 42 Pa. Cons. Stat. Ann. §5524, governs plaintiffs' Section 1983 action (Sameric, id.).

Although state law sets the applicable limitations period, federal law dictates when a Section 1983 action accrues (Montgomery v. De Simone, 159 F.3d 120,126 (3d Cir.

7

1998)).  And under federal law "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action" (id., quoting Gentry v. RTC, 937 F.2d 899, 919 (3d Cir. 1991)).

We agree with the district court that plaintiffs' Complaint was untimely under those standards.  As for any claims based on the Fourth Amendment, the search of the MacNamaras' home and the seizure of business records occurred on May 6.  Of course MacNamaras, who were present at the search, had knowledge of the injury on that date, and they have not claimed otherwise.  Accordingly any Fourth-Amendment-based claim accrued on the same day as the allegedly unlawful search and seizure  (cf. Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989)).

Despite the staleness of any such claim, plaintiffs contend that defendants' retention of the seized records was akin to a continuing violation so as to delay the date of accrual.  But that argument is scotched by the teaching confirmed in Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)(quotation marks omitted, emphasis in original) that the proper focus for accrual purposes is on the time of the alleged unlawful acts, "not upon the time at which the consequences of the acts became most painful."

In a civil rights action charging false imprisonment, Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982)(per curiam) similarly distinguished between a continuing violation occasioned by repeated unlawful acts and the ongoing ill effects stemming from an original violation.  Sandutch, id. concluded that the plaintiff's continued incarceration was an ill effect of the single allegedly wrongful act, rather than a continuing violation that would

8

defer the date on which his claim accrued. Although this Court has not had occasion to address the issue in a Section 1983 action alleging an unlawful seizure of property, without exception courts that have faced the question have found that the retention of the seized property is only a consequence of the original alleged illegal seizure and does not affect the date on which the claim accrues (see, e.g., Johnson v. Cullen, 925 F. Supp. 244, 249-50 (D. Del. 1996), discussing the line of cases that "have uniformly held that in section 1983 cases concerning deprivation of one's property, the violation of one's civil rights accrues when the property is seized").

In the same way, defendants' failure to return plaintiffs' records until September 26, as well as their continued possession of copies of some of the records,[5] may be ill effects of the original seizure, but they do not amount to continuing unlawful acts. Again plaintiffs do not dispute that they were aware of the seizure of their records when it occurred, and their claim is based on that allegedly unlawful act. Because the Complaint was filed more than two years after that date, plaintiffs' Fourth Amendment claim is barred by limitations.

Plaintiffs' claim under substantive due process was equally untimely.[6] On that score plaintiffs cannot and do not contest that they knew of all of the complained-of conduct at the time that it occurred: the plea agreement proposed on May 28, the June 2 meeting with defendants to discuss that agreement and the August 18 stop and inspection of a Blazer

---

[5] If defendants have wrongfully retained copies of plaintiff's records, plaintiffs may have a state law action for conversion, but that does not bear on the issue before us.

[6] Because we so hold, we find no need to address the substance of those allegations or the district court's analysis of their merits.

9

vehicle by Peters. Although plaintiffs adverted in wholly nonspecific terms to continued harassment, they have identified no other dates on which such conduct assertedly occurred. Because all of the identified events that form the basis of plaintiffs' due process claim thus occurred more than two years before the August 26, 1999 filing of the Complaint, that claim too is barred by limitations.

Plaintiffs seek to escape that outcome by contending that their claims did not accrue until the investigation into their alleged hauling violations was completed, attempting to invoke Heck v. Humphrey, 512 U.S. 477, 487 (1994). It will be recalled that to prevent collateral civil attacks on criminal convictions, Heck, id. held that a Section 1983 claim that would necessarily impugn the validity of a plaintiff's underlying conviction would not accrue until the conviction had already been invalidated. But as Heck, id. at 487 n.7 (emphasis in original) itself observed, that rule does not apply to a lawsuit seeking damages for an illegal search or seizure because "such a §1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." Hence the Seventh Circuit (for example) has held that because such a Fourth Amendment violation would not necessarily impugn the validity of a conviction, a claim of unlawful search and seizure accrues immediately (Gonzales v. Entress, 133 F.3d 551, 553 (7th Cir. 1998); Simpson v. Rowan, 73 F.3d 134, 136 (7th Cir. 1995)). We find that persuasive. Indeed, because plaintiffs were never even charged or prosecuted--let alone convicted--for any violation, any Heck analysis is entirely inapposite to plaintiffs' case.

Plaintiffs also advance the equally misguided argument that if they had brought suit

10

earlier a federal court would have abstained from addressing their claim under <u>Younger v.</u> <u>Harris</u>, 401 U.S. 37, 41 (1971). <u>Younger</u>, <u>id.</u> held that absent special circumstances a federal court should abstain from hearing a federal claim when there is a pending state proceeding in which those claims could be adjudicated. But by definition such abstention is not required in the absence of any ongoing state judicial proceeding (<u>see</u>, <u>e.g.</u>, <u>Hawaii</u> <u>Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 238-39 (1984); <u>Monaghan v. Deakins</u>, 798 F.2d 632, 637 (3d Cir. 1986), vacated at 484 U.S. 193, 199 (1998) solely because later events had rendered the issue moot).

Here, where there was <u>never</u> a state proceeding brought against plaintiffs at any point, <u>Younger</u> is patently inapplicable. Moreover, even if abstention had somehow applied to this case (as it has not), it would have operated to postpone only the exercise of federal jurisdiction, not the accrual of a cause of action (<u>General Glass Indus. Corp. v. Monsour</u> <u>Med. Found.</u>, 973 F.2d 197, 205 (3d Cir. 1992), recognized by <u>Feige v. Sechrest</u>, 90 F.3d 846, 850 (3d Cir. 1996) as having been overruled in another respect by <u>Quackenbush v.</u> <u>Allstate Ins. Co.</u>, 517 U.S. 706-730 (1996)).

In sum, there is no legal basis for any of plaintiffs' assertions that accrual did not occur at the time of the specified acts that form the basis of their due process claims, all of which acts occurred more than two years before the Complaint was filed. So those claims suffer the same fate of dismissal as plaintiffs' Fourth Amendment claims.

<u>First Amendment Claim</u>

Finally, plaintiffs argue that the district court erred in failing to address their First-

11

Amendment-based claim of retaliation. But even if any such claim were not similarly barred by limitations (an issue that we need not resolve under the circumstances), it must still fail because plaintiffs did not raise that claim adequately before the district court.

As Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994) has said, "[t]his court has consistently held that it will not consider issues that are raised for the first time on appeal." And Shell Petroleum, Inc. v. United States, 182 F.3d 212, 218 (3d Cir. 1999) has similarly reconfirmed that to avoid waiver a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." So fleeting references to issues that are unaccompanied by specific arguments are insufficient to preserve an issue for review (id.).

Here Amended Complaint ¶53 alleged that plaintiffs' "right to be free of retaliatory actions by government officials" had been violated. But despite the generosity accorded to notice pleading by Hishon and like cases, under the circumstances of this case that generalized assertion did not suffice to present the issue to the district court appropriately. Even though plaintiffs asserted, as part of their substantive due process argument in their memorandum opposing defendants' Rule 56 motion, that they were threatened with retaliation, nowhere did plaintiffs either raise or address the validity of a First-Amendment-based retaliation claim. Because plaintiffs thus did not argue their retaliation claim below, it has been waived (or forfeited), and we will not review it for the first time on appeal.

## Conclusion

As stated at the outset, we AFFIRM the judgment of the district court in its entirety.

12

TO THE CLERK:

Kindly file the foregoing opinion.



_Milton I. Shadur_       
District Judge