# United States Court of Appeals

## For the First Circuit

No. 04-2411

ROGER A. SEVIGNY, INSURANCE COMMISSIONER,
LIQUIDATOR OF THE HOME INSURANCE COMPANY,

Plaintiff, Appellee,

v.

EMPLOYERS INSURANCE OF WAUSAU,
A MUTUAL COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,

Campbell, Senior Circuit Judge,

and Gertner,* District Judge.

Natasha C. Lisman with whom Andrew R. Levin and Sugarman, Rogers, Barshak & Cohen, P.C. were on brief for appellant.
Peter C.L. Roth, Senior Assistant Attorney General, with whom Kelly A. Ayotte, Attorney General, was on brief for appellee.

June 9, 2005

---

*Of the District of Massachusetts, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.** The case before us presents another variation on the question when, under the so-called abstention doctrines, a federal court should defer to state proceedings. The appellant is Employers Insurance of Wausau ("Wausau"); the appellee is Roger A. Sevigny, Insurance Commissioner of New Hampshire ("Commissioner"), acting as liquidator of The Home Insurance Company ("Home"), now insolvent. We begin with the background events and then describe the state court proceedings and the federal action now before us.

Prior to its insolvency, Home was an insurance company, incorporated and based in New Hampshire, engaged both in providing insurance to customers and in reinsurance; a reinsurer provides indemnity to another insurer for a share of payments made under one or more of the other insurer's policies. Home provided reinsurance, as did a related entity called US International Reinsurance ("USI Re").

Wausau is a well-known Wisconsin insurer, also engaged in both insurance and reinsurance. Wausau is Home's reinsurer under several reinsurance agreements entered into in the 1980's (the "outwards agreements"). Under separate agreements, Home and USI Re became Wausau's reinsurers (the "inwards agreements"). In the mid-1990s, quite possibly because Home and USI Re were encountering financial difficulties, Wausau began to set off--that is, reduce or "cancel out"--amounts it owed to Home under the outwards agreements

against amounts it was owed by USI Re under the inwards agreements. Home is allegedly a 100 percent reinsurer of USI Re's insurance obligations and the two companies apparently shared management at least in part.

Home and USI Re objected to the setoffs and, in 1999, they arbitrated the matter with Wausau. One issue raised was whether the debts (owed to Wausau by USI Re) and the credits (owed to Home by Wausau) being set off by Wausau were "mutual." Home argued, inter alia, that there was no mutuality because Wausau was offsetting the obligations of different entities; Wausau argued that there was mutuality because Home completely reinsured all of USI Re's obligations. The arbitration panels, with minimal explanation, concluded that Wausau's setoffs were "proper and valid."

On March 5, 2003, the New Hampshire Superior Court of Merrimack County (on the petition of the then-Commissioner) issued a rehabilitation order with respect to Home. On June 13, 2003, after the Commissioner had determined that rehabilitation was futile, the Superior Court issued an order of liquidation and appointed the Commissioner as Home's liquidator under N.H. Rev. Stat. Ann. §§ 402-C:19, 402-C:21(I) (1998).

Among many other things,[1] the order enjoined "the setoff of any debt owing to The Home; provided, however, that notwithstanding anything in this Order to the contrary, nothing herein is intended nor shall it be deemed to stay any right of setoff of mutual debts or mutual credits by reinsurers as provided in and in accordance with RSA 402-C:34." The statutory provision referred to states, with certain exceptions not applicable here, as follows:

> Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter shall be set off and the balance only shall be allowed or paid . . . .

N.H. Rev. Stat. Ann. § 402-C:34(I) (1998).

The Commissioner, on October 8, 2003, filed suit in the Superior Court seeking "a judgment" that, under the liquidation order and section 402-C:34 (quoted immediately above), setoffs only of mutual debts and credits were permissible; "a judgment that no mutuality exist[ed]" for the setoffs in this case; and any further relief deemed proper by the court. On November 20, 2003, Wausau removed the case to federal district court, invoking jurisdiction

---

[1]The liquidation order contained numerous other provisions. For example, it directed the Commissioner to secure all the property and records of Home, ordered that the Commissioner cancel certain contracts, authorized the Commissioner to engage in certain transactions, prohibited Home's officers and employees from continuing business without the Commissioner's permission, and stayed any actions or other attempts to collect against Home.

-4-

based inter alia on diversity of citizenship as between Wausau and Commissioner.

The Commissioner moved to remand under the Burford and Colorado River abstention doctrines. The former, derived from Burford v. Sun Oil Co., 319 U.S. 315 (1943), requires in certain circumstances a federal court to abstain in favor of state processes where federal litigation would interfere with a state administrative scheme and where adequate state judicial review exists. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-19 (1976), represents a more amorphous abstention doctrine whose contours can be variously described. These are among various court-made doctrines and statutory directions that permit, or sometimes require, federal court abstention.[2]

Seeking abstention and remand, the Commissioner urged that New Hampshire has a "comprehensive and uniform" liquidation scheme that would be disrupted by the intrusion of the federal court. Wausau opposed, arguing first that the primary issue was its issue-preclusion defense that the setoffs were proper because

_____

[2]The statutory provisions include the Johnson Act, 28 U.S.C. § 1342 (2000) (precluding certain injunctions against state public utility regulation), and the Tax Injunction Act, 28 U.S.C. § 1341 (2000) (precluding injunctions of assessment, levy and collection of state taxes). Younger v. Harris, 401 U.S. 37 (1971), and Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), are, with Burford and Colorado River, among the principal court-made abstention doctrines.

the arbitrators had determined them to be mutual, and more generally that a federal court decision in this case would not have the repercussions on Home's liquidation that the Commissioner claimed it would.

On September 7, 2004, in an order by the magistrate judge to whom the case had been submitted, see 28 U.S.C. § 636(c) (2000); D.N.H. Rule 73.1(b)(2)(B), the district court remanded the case to the state court, finding that abstention was proper under both the Burford and Colorado River doctrines. Sevigny v. Employers Ins. of Wausau, No. Civ. 03-501-JM, 2004 WL 1969871, at *4-*7 (D.N.H. Sept. 7, 2004) (unpublished opinion). Wausau has now appealed from the remand order, this being permissible under Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 715 (1996).

The standard of review as to abstention decisions is sometimes said to be abuse of discretion. See Dunn v. Cometa, 238 F.3d 38, 43 (1st Cir. 2001). But as we explained in Cotter v. Mass. Ass'n of Law Enforcement Officers, 219 F.3d 31, 34 (1st Cir. 2000), "abuse of discretion" is sometimes "a misleading phrase" because "[d]ecisions on abstract issues of law are always reviewed de novo; and the extent of deference on 'law application' issues tends to vary with the circumstances." In this case nothing appears to turn on the precise standard of review.

The Burford doctrine is a set of variegated responses built around a central theme. "The fundamental concern in Burford

-6-

is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Pub. Serv. Co. of N.H. v. Patch, 167 F.3d 15, 24 (1st Cir. 1998). Burford itself involved a due process clause challenge in a federal court to a drilling permit issued by the Texas agency charged with responsibility for such regulation. The Supreme Court endorsed abstention.

Although the due process challenge raised a federal issue, the Supreme Court concluded even so that this issue was closely intertwined with complex issues of state law and policy, administered through an agency subject to state court review, so that federal-court interference was likely to cause more disruption than good. See Burford, 319 U.S. at 323-25, 333-34. The federal due process issue could, of course, have been resolved in state court with possible further direct review in the Supreme Court itself. Id. at 334.

A contrast is provided by New Orleans Public Service, Inc. v. Council of the City of New Orleans ("NOPSI"), 491 U.S. 350 (1989). There, a city council rate-making order was challenged in federal court as inconsistent with a federal agency order issued by the Federal Energy Regulatory Commission ("FERC"). Id. at 356-57. The Supreme Court rejected Burford abstention, see id. at 361-64, quite possibly concerned with a threat to the supremacy of the

federal regulatory scheme if the meaning of the FERC order were left to state court interpretation on review of the city council order.

NOPSI is sometimes viewed as cutting back on Burford abstention, see, e.g., Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993) ("NOPSI cabins the operation of the Burford doctrine."). Yet NOPSI also contains a general reformulation of Burford, often quoted, that can be read expansively or narrowly and is ultimately ambiguous.[3]  In any case, there is no Supreme Court precedent directly in point here: in Quackenbush the Court faced a Burford issue in an insurance liquidation case but disposed of it on grounds not relevant here.  Quackenbush, 517 U.S. at 730-31.

Circuit precedent is also of only limited help.  One of our own cases, Gonzales v. Media Elements, Inc., 946 F.2d 157, 157 (1st Cir. 1991), found--with minimal analysis--Burford abstention to be proper in matters involving insurance company liquidation, as have cases in other circuits.[4]  More recently, we have issued a

_____

[3]The NOPSI passage says that where adequate state court review is available, federal courts "must decline to interfere with proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import . . .'; or (2) where the 'exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" NOPSI, 491 U.S. at 361 (quoting Colorado River, 424 U.S. at 814).

[4]See Feige v. Sechrest, 90 F.3d 846, 847-48 (3d Cir. 1996); Barnhardt Marine Ins., Inc. v. New Eng. Int'l Sur. of Am., Inc., 961 F.2d 529, 531-32 (5th Cir. 1992); Hartford Cas. Ins. Co. v.

decision--Fragoso--that points the other way and purports to limit our earlier case in light of NOPSI. In Fragoso, the legal issue embedded in a federal court case involving a liquidating insurer--a statute of limitations defense--appeared highly conventional and easily separable from the state reorganization scheme, 991 F.2d at 883-85.[5] Still, for various reasons, Fragoso was a somewhat weaker case for abstention than our own.

So, without the help of clear governing precedent or a self-executing Burford rule, we turn to our own facts. In doing so, we remain respectful of Burford's central concern with protecting state-agency schemes; but we qualify that concern, in light of NOPSI and Fragoso, with an awareness that some issues arising in or bearing upon such a proceeding can be litigated in federal court without threatening state policy--and also that there is sometimes a special federal interest (e.g., the FERC orders) that Burford abstention might imperil.

---

Borg-Warner Corp., 913 F.2d 419, 425-27 (7th Cir. 1990); Lac D'Amiante de Quebec, Ltee v. Am. Home Assurance Co., 864 F.2d 1033, 1042-49 (3d Cir. 1988); Law Enforcement Ins. Co. v. Corcoran, 807 F.3d 38, 43-44 (2d Cir. 1986).

[5]A pre-NOPSI case that also had a narrowing outlook was Bath Memorial Hospital v. Maine Health Care Finance Commission, 853 F.2d 1007 (1st Cir. 1988). Bath focused on whether the federal court would have to engage in "highly individualized review of particular, firm-specific regulatory decisions," and ultimately decided that a federal law attack on a state rate-making statute "as it is written" did not merit Burford abstention because the case did not involve such review. Id. at 1014.

In this case, Burford abstention would be the presumptive answer had the Commissioner made an administrative decision--say, claiming an equitable discretion to disallow any setoff injurious to Home policyholders--and had Wausau then challenged that action in a federal court diversity suit. But the removed lawsuit here was one brought by the Commissioner in state court to do only two things: to construe a state statute governing setoffs (section 402-C:34) and to apply it (or background state law) to classify Wausau's attempted setoff as mutual or non-mutual. Wausau in return has raised a defense of issue preclusion.

Perhaps, in a liquidation scheme like New Hampshire's, a state court might itself be analogized to an agency for purposes of Burford.[6] But quite unlike Burford, the state-law issues presented in this case appear conventional, are not discretionary policy or administrative judgments and could arise in any common-law action. The Commissioner asserts that Wausau seeks "some form of relief from the Liquidation Court's stay order" and that any such relief (or refusal to grant such relief) would be an exercise of the state

---

[6]This court reserved judgment on the issue in Fragoso, 991 F.2d at 883, but the magistrate judge here cited some precedent for the view that Burford might in some cases be triggered as readily by a state court action as by a state agency proceeding. E.g., Quackenbush, 517 U.S. at 733 (Kennedy, J., concurring); Feige v. Sechrest, 90 F.3d 846, 847-48, 851 (3d Cir. 1996) (affirming an abstention order in deference to state-court liquidation proceedings); see also Quackenbush, 517 U.S. at 731. Compare NOPSI (quoted note 3 above) referring specifically to "state administrative agencies."

court's policy-oriented discretion. This is misleading: the current order tracks the statute and it is the statute that controls the outcome. Whether or not the state court has some equitable discretion to forbid setoffs allowed by section 402-C:34, the Commissioner's declaratory action asked for no such ruling.

We agree with the magistrate judge that the reading and application of the state statute may present "difficult questions of state law." But difficult state law questions alone are not enough for Burford abstention. See Fragoso, 991 F.2d at 883 (presence of difficult state-law questions, "without more, would not justify abstention"). Compare R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 499-501 (1941) (requiring abstention when state law is uncertain and a clarification might make resolution of a federal constitutional issue unnecessary). Burford's concern is interference with the state regulatory process. NOPSI, 491 U.S. at 361.

No doubt answering the setoff question here will likely affect the amount of money left for policyholders. But the financial effects on the liquidation cannot be enough. See Fragoso, 991 F.2d at 884-85. Otherwise the Commissioner could invoke Burford in every federal suit between himself as liquidator and any third party who had a still-unsettled tort or contract dispute with the now-insolvent insurer, regardless of its actual disruptive effect upon the liquidation.

-11-

In sum, the issues presented by the removed case are not so intertwined with issues of agency authority or state regulatory policy that their federal-court resolution would imperil a complex regulatory scheme. Abstention occurs "only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal court review inappropriate." Fragoso, 991 F.2d at 882. Resolution of the setoff issues by a state, rather than a federal, court might be justified to assure that the state statute is properly interpreted; but for this concern certification is available, see N.H. Sup. Ct. R. 34 (2005), leaving for federal court resolution other issues not readily certifiable.

Wausau has alleged that even if section 402-C:34 could otherwise be read and applied as sought by the Commissioner, issue preclusion establishes that setoff is proper as to the debts involved here. Further, the company claims that this outcome is underpinned by the Federal Arbitration Act. This is a complicated issue, quite apart from any supposed federal interest, which involves questions of how far arbitration rulings have a collateral estoppel effect, whose law governs that question, and whether the issue decided in the arbitration is exactly the same as that posed under the New Hampshire statute.

-12-

These are not necessarily federal issues.  See Jacobs v. CBS Broad., Inc., 291 F.3d 1173, 1177 (9th Cir. 2002) (preclusive effect of arbitration award is a state-law issue); BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997) (same). But in all events, even assuming that the Federal Arbitration Act has some significance, our disposition would leave any federal issues in the federal district court.  The collateral estoppel issue is itself distinct from the meaning of the state statute.

If Burford abstention is a work in progress, Colorado River is scarcely a formal "doctrine" at all.  Colorado River involved two overlapping actions--one, a federal court lawsuit by the United States against numerous defendants to establish water rights of its own and of certain Indian tribes; the other, a later-filed state action involving similar claims to which the United States was added under a special federal statute allowing such actions.  Colorado River, 424 U.S. at 805-06.  Much of the Supreme Court decision focused on that federal statute.  Id. at 806-13.

After resolving that the district court had jurisdiction to hear the federal case, and that the state court also had jurisdiction to resolve the United States' claims, the Supreme Court considered whether the federal court had properly abstained in favor of the state proceeding.  Although the Court said that no then-existing abstention doctrine applied, Colorado River, 424 U.S. at 817, the decision concluded that abstention was nevertheless

-13-

warranted.  The main reasons were (1) the special federal statute encouraging unified resolution of water disputes, (2) the fact that the federal action had barely begun when the state proceedings commenced, and (3) the massive impact on state-law water rights that the federal action would have had in light of the large number of parties involved.  See id. at 819-20.

Colorado River is a case peculiarly tied to its own facts and to the federal statute there construed.  Perhaps its greatest use is as reminder that abstention doctrines are not a closed-end collection of exceptions to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  Colorado River, 424 U.S. at 817.  However, the circumstances of this case are neither close to those in Colorado River nor do they suggest any reasons for abstention so powerful as to justify some new exception to the (often fractured) duty of federal courts to exercise jurisdiction.

If one were rationally redrafting the law allocating cases as between federal and state courts, cf. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts (1969), federal jurisdiction in this case would be unlikely.  So, too, an ad hoc weighing of considerations would probably favor letting the state court handle the present case, state law issues being predominant.  But while making an ad hoc judgment of its own in Colorado River, the Supreme Court made clear

that generally its doctrines govern abstention and that <u>ad hoc</u> departures are for the extraordinary case.

Accordingly, we <u>vacate</u> the judgment of the district court and <u>remand</u> with directions to the district court to vacate its own order remanding the removed case back to state court. Nothing in this decision precludes the district court from certifying appropriate state law issues to the New Hampshire courts. Each side is to bear its own costs on this appeal.

<u>It is so ordered</u>.