Rosario GUZZI, Plaintiff,

v.

Michael THOMPSON, Greg McCann, and Rabbi Blotner, Defendants.

Civil Action No. 06-10874-WGY.

United States District Court, D. Massachusetts.

Jan. 25, 2007.

---

Joan T. Kennedy, Department of Correction, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

The Federal Rules of Civil Procedure provide the mounting for the prism through which this Court must view the allegations in this case. Only the motion for a preliminary injunction of the plaintiff Rosario Guzzi's ("Guzzi") and the motions to dismiss the defendants Michael Thompson, Greg McCann, and Rabbi Blotner (collectively "Defendants") are properly before this Court. This Court therefore touches on the merits of the case only insofar as raised and limited by each unique motion. Many issues of fact and law remain for adjudication at the impending trial unless a prompt and properly supported motion for summary judgment requires this Court to reach and decide the dispositive issues of the case.

## I. BACKGROUND

### A. Alleged Facts

Guzzi is an inmate lawfully incarcerated at MCI–Shirley Medium ("MCI"), a medium security prison located in Shirley, Massachusetts. Am. Compl. ¶ 1. Guzzi identifies himself as a believer in and follower of the tenets of the Orthodox Catholic faith. *Id.* ¶ 23. On diverse dates in 2002, Guzzi sought inclusion on the Special Diet List to receive kosher meals. *Id.* ¶ 6. MCI offers various meals for inmates according to the dietary needs of Jews, Muslims, Buddhists, and vegans. *Id.* ¶ 25. The Director of Treatment at MCI, the defendant Greg McCann ("McCann"), initially approved Guzzi's request. *Id.* ¶ 7. McCann and the defendant Rabbi Blotner ("Blotner") reexamined Guzzi's eligibility in January, 2004. *Id.* ¶ 9.

At the eligibility hearing, Blotner stated that Guzzi was not a Jew, of maternal Jewish lineage, or a convert. *Id.* ¶ 10. Guzzi does not allege that he meets any of those criteria. *Id.* at 2. As a result, McCann found Guzzi ineligible for a kosher diet. *Id.* McCann denied Guzzi the

kosher diet due to financial considerations. *Id.* ¶ 29.

### B. Procedural History

Guzzi and three other plaintiffs have already filed an action similar to this on or about May 25, 2004 in the Massachusetts Superior Court. Defs. Mem. at Ex. 1. In that action, they filed a motion for preliminary injunction, nearly identical to the one presently before this Court. Opp'n to Mot. for Prelim. Inj. at Ex. 1. Allegedly, this motion was denied, though the docket is unclear. *See id.* at 1. This state proceeding is still ongoing.

Nearly two years later, on May 17, 2006 Guzzi initiated this federal action against defendants Michael Thompson ("Thompson"), McCann, and Blotner by filing a complaint [Doc. No. 3] and a memorandum of law [Doc. No. 4]. Guzzi amended the complaint on July 28, 2006 [Doc. No. 8] ("Am.Compl."). On the same day, Guzzi filed an *ex parte* motion for a preliminary injunction [Doc. No. 9] and a supporting memorandum [Doc. No. 10] ("Pl. Mem. in Supp. of Prelim. Inj."). On August 7, 2006, this Court dismissed the motion without prejudice and instructed Guzzi to wait until a responsive pleading was filed to renew the motion [Doc. No. 11]. Guzzi did so through a motion for reconsideration [Doc. No. 19] on December 4, 2006. Two days later, this Court combined the motion for preliminary injunction with a trial on the merits pursuant to Rule 65(b) and placed the case on the February running trial list.

Thompson and McCann filed a motion to dismiss [Doc. No. 23] on January 4, 2007. Blotner filed a separate motion to dismiss on the same day [Doc. No. 24]. The Defendants filed a joint memorandum in support of their separate motions [Doc. No. 25] ("Defs.Mem."). The Defendants also filed an opposition to the motion for preliminary injunction [Doc. No. 26] ("Opp'n to Mot. for Prelim. Inj.").

### C. Jurisdiction

This Court has the federal question jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

## II. DISCUSSION

### A. Defendants' Motions to Dismiss

#### 1. Limits of the Motions to Dismiss

The Defendants' motions to dismiss are based solely upon abstention grounds. *See* Defs. Mem. at 4–15. The Defendants' abstention argument does not depend on the drawing of inferences from the factual record. Were it to do so, this Court, for purposes of a motion to dismiss, would be required to draw "all reasonable inferences from properly pleaded facts ... in the plaintiff['s] favor." *Roma Constr. Co. v. aRusso,* 96 F.3d 566, 568 (1st Cir.1996).

No argument for dismissal based upon the merits of Guzzi's claim is proffered. *See id.* As a result, the merits of Guzzi's claim are touched on here only with reference to the possible need for interim relief pending a prompt trial.

#### 2. No Abstention under the *Colorado River* Doctrine

The Defendants focus their arguments in opposition to the preliminary injunction and in favor of dismissing or staying this case exclusively on the theory of abstention enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *See* Defs. Mem. at 4–15; Opp'n to Mot. for Prelim. Inj. at 1–2. The Defendants argue that Guzzi's federal action is duplicative of his state action and that this Court ought abstain from exercising jurisdiction. Defs. Mem. at 4.

In general, federal courts have the "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist.*, 424 U.S. at 817, 96 S.Ct. 1236. This general rule is not absolute. In narrow circumstances, federal courts may abstain from exercising jurisdiction. *Id.* at 813, 96 S.Ct. 1236. Abstention is, however, the exception and not the rule. *Id.* The mere presence of parallel state litigation will not counsel a federal court to abstain. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 12 (1st Cir.1990) ("[T]he pendency of an overlapping state court suit is an insufficient basis in and of itself to ,warrant dismissal of a federal suit.")

The Supreme Court recognizes at least four categories within the doctrine of abstention. The first is present where a federal constitutional issue might be mooted by a state court's determination of state law. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The second involves difficult questions of state law with public policy issues at stake that transcend the result of the specific case at issue. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Third, abstention is proper where federal court action would restrain a state criminal proceeding. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Finally, a fourth abstention category, referred to as the *Colorado River* doctrine, exists based upon "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist.*, 424 U.S. at 817, 96 S.Ct. 1236 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

The first three abstention categories rest on important issues of proper constitutional adjudication or comity concerns. These issues are weightier than the pragmatic concerns that drive the fourth category. *Id.* at 818, 96 S.Ct. 1236. As a result, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.*

To fall within the narrow category of *Colorado River* abstention, the movant must demonstrate that "exceptional circumstances" exist. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Villa Marina Yacht Sales, Inc.*, 915 F.2d 7 at 13 (noting that there is a "heavy presumption favoring the exercise of jurisdiction."). The Supreme Court, in *Colorado River*, identified four factors to be assessed in determining whether this standard is met. *Colorado River Water Conservation Dist.*, 424 U.S. at 818–19, 96 S.Ct. 1236. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise is required." *Id.* at 818–19, 96 S.Ct. 1236. The decision to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927. This analysis is not, however, a true balancing, for the scale must begin "heavily weighed in favor of the exercise of jurisdiction." *Villa Marina Yacht Sales, Inc.*, 915 F.2d at 12.

In addition to the four factors identified in *Colorado River*, the First Circuit has identified two additional factors to consider based upon a close reading of the

*Colorado River* decision and its follow-on cases. *Rivera–Feliciano v. Acevedo–Vila*, 438 F.3d 50, 62 (1st Cir.2006). The resulting six factors are: (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the fora obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *Id.*

Applying the factors here, the Defendants concede that the first two factors favor exercising jurisdiction and counsel against abstention. Defs. Mem. at 6. This case does not involve property, and the federal forum is just as convenient as the state forum. *Id.*

The third factor seeks to address whether abstention would assist in the avoidance of piecemeal litigation. *Colorado River Water Conservation Dist.*, 424 U.S. at 819, 96 S.Ct. 1236. Piecemeal litigation, in this context, does not simply mean that related issues would be decided by different court. *Villa Marina Yacht Sales, Inc.*, 915 F.2d at 16. Concerns over judicial efficiency are not sufficient to support abstention. *Id.* Instead, this factor must be viewed through the prism of its origin in *Colorado River. See Colorado River Water Conservation Dist.,* 424 U.S. at 819, 96 S.Ct. 1236. In *Colorado River,* the Supreme Court did not seek to avoid piecemeal litigation itself, but "piecemeal adjudication of water rights." *Id.* This policy was evidenced in a federal statute—the McCarren Amendment. *Id.* The First Circuit has highlighted the presence of the McCarren Amendment in the application of the *Colorado River* doctrine by stating that *"Colorado River* is a case peculiarly tied to its own facts and to the federal statute there construed." *Sevigny v. Employers Ins. of Wausau,* 411 F.3d 24, 30 (2005).

The parallel federal and state proceedings here do not implicate a federal policy enshrined in a federal statute similar to the one at issue in *Colorado River.* Instead, the Defendants argue that special complications exist in this case that require abstention. Defs. Mem. at 8. The Defendants argue that "the fact that liability will arise in both suits may be significant if, in a particular context, it has the potential for unfairness or harm." *Id.* The Defendants cite *Gonzalez v. Cruz,* 926 F.2d 1, 4 (1st Cir.1991) for support, but are slightly in error in this characterization of the law. The court in *Gonzalez* stated that "[t]he mere fact that the issue of liability will arise in both suits and that proof may be overlapping is not necessarily significant unless this fact, in a particular context, has potential for unfairness or harm." *Id.* The actual holding in *Gonzalez* suggests more emphatically that a potential for "unfairness" or "harm" are exceptions to a general rule, not narrowly defined rules in themselves. *See id.*

The Defendants argue that special complications exist due to a "real risk of inconsistent results." Defs. Mem. at 8. This risk arises, however, because both courts will be "considering the same factual issues and virtually all of the same legal issues." *Id.* This "risk" is largely obviated by the doctrines of *res judicata* and collateral estoppel. Of course, the existence of prejudgment orders such as interlocutory orders raises the real possibility of actual conflicts. The Defendants raise this legitimate concern. *Id.* It is, however, a concern that arises out of the waste of judicial resources endemic to all cases of parallel litigation. Because this case fails to raise concerns emanating from piecemeal litigation *more* harmful or *more* unfair than the generalized risks of waste and prejudgment conflicts, the third factor fails to

meet the threshold that would counsel abstention.

The fourth factor favors federal abstention only where the state proceeding preceded the federal action and has advanced to a significant degree. *See Colorado River Water Conservation Dist.*, 424 U.S. at 818, 96 S.Ct. 1236. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21, 103 S.Ct. 927. Abstention is proper where the state proceedings have progressed to a substantial degree and only the complaint, prior to a motion to dismiss, has been filed in the federal action. *Colorado River Water Conservation Dist.*, 424 U.S. at 820, 96 S.Ct. 1236. This factor becomes more neutral and nullified the more the degree of progress in the federal action is in parity with the degree of progress in the state action. *See Currie v. Group Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir.2002) (failing to weigh this factor in the final abstention analysis where both the federal and state action were past summary judgment and on appeal).

The priority and procedural development of the instant case and its parallel case in the Massachusetts Superior Court favor abstention. Guzzi and three others initiated the state action on June 8, 2004. Defs. Mem., Ex. 2 at 6. He immediately filed a motion for a preliminary injunction, though it is unclear whether the Superior Court actually ruled on this motion. *Id.* The Superior Court has addressed a motion for a judgment on the pleadings by Guzzi on March 14, 2005 and a motion to dismiss by the Defendants the following day. In addition, the state court proceeding included various other motions and a few relevant discovery requests. *See generally id.*

In contrast, the federal action has included only the motion for preliminary injunction and the Defendants' motions to dismiss. No discovery has occurred. This is not, however, a situation where one case has progressed starkly beyond the other. Despite the two years of litigation, the state proceeding has not reached summary judgment, and a final disposition does not appear imminent. The Federal action has been placed on the February running trial list and trial is imminent. Therefore, while this factor counsels abstention, its weight is not overwhelming.

The fifth factor will favor abstention only if state law predominates and provides the rule of decision. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 24 n. 29, 103 S.Ct. 927 (noting that this issue was of ambiguous relevance in *Colorado River* because the bulk of the litigation would center on state-law water rights). In *Moses H. Cone Memorial Hospital*, the Supreme Court stated that "in some rare circumstances the presence of state-law issues may weigh in favor of ... surrender [but] the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26, 103 S.Ct. 927. This factor is better understood as asking whether complex questions of state law exist that counsel the application of an exception to exercising federal jurisdiction. *See Villa Marina Yacht Sales, Inc.*, 915 F.2d at 15. The state law at issue must, however, be sufficiently novel. *Id.* at 16; *see Sevigny*, 411 F.3d at 30 (rejecting abstention under the *Colorado River* doctrine despite state laws being predominant). Additionally, the circumstances of the case must make certification of the state law issue to the state courts impracticable. *See Sevigny*, 411 F.3d at 30.

■ The Defendants argue that this factor favors abstention because the Constitution of the Commonwealth of Massachusetts provides greater protection for prisoner religious rights than the federal constitution. Defs. Mem. at 10–11. In effect, the Defendants make a constitutional avoidance argument that would resonate more strongly under a *Pullman* doctrine analysis. *See id.; Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. at 501, 61 S.Ct. 643. Instead, the relevant question under *Colorado River* is whether the state law is settled and, if not, to what degree it is complex. *See Villa Marina Yacht Sales, Inc.,* 915 F.2d at 15. The Defendants' memorandum belies their own argument by setting out the well-defined "substantial burden" test followed by the Massachusetts courts. Defs. Mem. at 11. In addition, Guzzi brings his federal action under the federal Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Am. Compl. at 1. The presence of a federal claim counsels against abstention. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25, 103 S.Ct. 927.

■ The sixth factor is neutral. *See id.* at 26, 103 S.Ct. 927. Abstention is improper where the state court would inadequately protect the plaintiff's rights. *Id.* Here, the state and federal action have concurrent jurisdiction over all claims asserted and both courts are equally competent. As a result, this factor is neutral in its effect on the abstention analysis.

■ Analyzing these factors in aggregate, in light of the heavy presumption in favor of exercising jurisdiction, this Court does not abstain. The only factor that weighs in favor of abstention is the priority of the suits filed. While the state action was over two years old when this federal action was filed, Defs. Mem., Ex. 2 at 6, little substantive progress has occurred, especially given that amount of time. *See generally id.* The federal action, in contrast, is on the running trial list for February, 2007 and is almost sure to be reached. In light of the general rule and obligation to exercise jurisdiction when given, abstention in this case would be improper.

## B. Interim Relief

Although Guzzi's motion for a preliminary injunction has galvanized this Court into action, the press of trials already scheduled necessarily means that a merits determination is still weeks away. What, if anything, ought happen in the meantime?

■ To succeed in gaining interim relief, Guzzi must demonstrate the following familiar four criteria: (1) a likelihood of success on the merits; (2) irreparable harm to the plaintiff should interim relief not be granted; (3) whether the harm to the defendant from granting the interim relief exceeds the harm to the plaintiff from denying it; and (4) the effect of the interim relief on the public interest. *Rio Grande Comty. Health Ctr., Inc. v. Rullan,* 397 F.3d 56, 75 (1st Cir.2005). The indispensable and key factor in such an analysis is the likelihood of success on the merits. *New Comm Wireless Servs. Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002). If a likelihood of success on the merits is not found, the remaining factors become irrelevant and the interim relief must be denied. *See id.* On the other hand, if the first factor is satisfied, Guzzi independently must still satisfy the remaining three factors. *See Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981).

In this case, a likelihood of success on the merits requires Guzzi to demonstrate that he brings a compelling claim under the RLUIPA, 42 U.S.C. § 2000cc–1, due to

his request for a kosher meal despite not practicing the Jewish faith. The RLUIPA protects institutionalized persons who are dependent on the government's permission and accommodation to pursue and to practice their religious beliefs. *Cutter v. Wilkinson,* 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

Section 3 of RLUIPA provides, in pertinent part, that:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc–1(a)(1)–(2). This statute sets up a burden shifting standard, whereby the plaintiff must first demonstrate that he or she has been inhibited in an "exercise of religion" and that the resulting burden is "substantial." *See id.* Once that burden is met, the defendant must show that a "compelling interest" exists and that the regulations are the "least restrictive means" of serving that interest. *See id.*

The central focus of this factor, when applied to this case, is whether Guzzi's alleged right to a kosher meal meets the statutory definition of a "religious exercise." RLUIPA defines a "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). This broad definition, rejecting a "central tenet" requirement resulted from the congressional response to the Supreme Court decision in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), interpreting the Religious Freedom Restoration Act.

*Madison v. Riter,* 355 F.3d 310, 314–15 (4th Cir.2003); *Spratt v. Wall,* No. C.A. 04–112 S., 2005 WL 3434739, *3 (D.R.I. Nov.21, 2005).

In applying the statutory definition to the facts at hand, this Court recognizes that there is no question that the practice of "keeping kosher" constitutes a religious exercise for various sects of the Jewish faith. *See Resnick v. Adams,* 348 F.3d 763, 765, 769 (9th Cir.2003); *Ran–Dav's County Kosher Inc. v. State,* 129 N.J. 141, 146, 608 A.2d 1353 (1992) (describing the religious origin and nature of the kosher diet in the Jewish faith). The act of observing the requirements of a kosher diet is religious in nature and easily falls within the statutory definition of the RLUIPA. *See* 42 U.S.C. § 2000cc–5 (7)(A). If Guzzi alleged that he followed Judaism and alleged that his faith required him to keep kosher, the dispositive inquiry would be whether Guzzi sincerely held that belief. *See Cutter,* 544 U.S. at 713, 725 n. 13, 125 S.Ct. 2113 ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion ... the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."); *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir.1987) ("It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs."). If so, he would have a protected right to that religious exercise, and the Court would move directly to whether the government substantially burdened that right and demonstrated that its regulation of that religious practice is nevertheless reasonable.

The complication in this case is that Guzzi does not allege that he follows Judaism. He describes himself as an Orthodox Catholic. Pl. Mem. in Supp. of Prelim. Inj. at 6. While keeping kosher within the practice of various sects of Judaism consti-

tutes a religious exercise, keeping kosher itself is not a religion. *See Starr v. Cox*, No. 05–CV–368–JD, 2006 WL 1575744, \*3 (D.N.H. June 5, 2006) (slip copy) (discussing that the practice of Tai Chi itself is not a religion). As a result, Guzzi cannot assert a protected right to keep kosher solely by demonstrating a sincere belief in the need to follow that religious practice. *See id.*

■ Instead, Guzzi must show that keeping kosher is part of a system of religious belief. *See id.* at \*4 n. 8 (noting that the definition of "religious exercise" under the RLUIPA requires the plaintiff to establish that the exercise is part of a system of religious belief); 42 U.S.C. § 2000cc–5 (7)(A). The broad definition of a religious exercise in the RLUIPA does not require that the practice be a core tenet of that religion, but it does require the existence of some belief system from which the practice is derived. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (noting when recognizing a religious exercise as protected that a favorable factor is its shared adherence by an organized group); *Starr v. Cox*, 2006 WL 1575744 at \*4 n. 8 (rejecting the plaintiff's ability to claim religious protection based solely on his personal views). Guzzi's purely subjective ideas of what his religion requires will not suffice. *See Wisconsin*, 406 U.S. at 215–16, 92 S.Ct. 1526 (recognizing for purposes of a First Amendment inquiry that individuals are not free to define religious beliefs solely based upon individual preference).

An analogous example is found in the unpublished District of New Hampshire decision, *Starr v. Cox. See* 2006 WL 1575744 at \*4. In *Starr*, a prisoner asserted a religious right to practice Tai Chi despite not ascribing to Taoism—the sys-

tem of religious beliefs that often includes the practice of Tai Chi among its religious practices. *Id.* at \*3–\*4. The court held that the prisoner could not prevail on a motion for preliminary injunction because he was not likely to succeed in demonstrating that the practice of Tai Chi, separate from the practice of Taoism, constituted protected religious activity under the RLUIPA. *Id.* at \*4.

The need for some organic system of belief beyond a purely subjective and isolated construction is not an attempt to limit protected religious activities but to limit a factfinder's role in deciding which activities are deserving of such characterization. It is true that a factfinder in such a case must gauge credibility when assessing the sincerity of a purported religious devotion or compulsion. *See Cutter*, 544 U.S. at 713, 725 n. 13, 125 S.Ct. 2113; *Lovelace v. Lee*, 472 F.3d 174, 187 n.2, 2006 WL 3823127, \*6 n. 2 (4th Cir. Dec.29, 2006). When such an inquiry is done, however, with reference to and guided by some objective or institutionalized system of beliefs, the determination of sincerity does not entail a judgment as to the merits or appropriateness of the practice in a religious sense. *Cf. Gillette v. United States*, 401 U.S. 437, 457, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (explaining in a conscientious objector case that "the more discriminating and complicated the basis of classification for an exemption—even a neutral one—the greater the potential for state involvement in determining the character of persons' beliefs and affiliations, thus entangl[ing] government in difficult classifications of what is or is not religious . . . .") (internal citations omitted). This latter inquiry would be required at some point when faced by unfamiliar religious practices if sincerity as to an isolated and personal view were enough for statutory

protection.[1] Such religious judgment would exceed the expertise and role of a judicial factfinder and make such a determination ripe for abuse. *See Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 716, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)

Guzzi appears to understand this requirement, and he seeks to argue that "traditional concepts of Catholicism" and modern orthodoxy, even among Catholics, required and requires the same dietary laws followed by Jewish sects. Pl. Mem. in Supp. of Prelim. Inj. at 6. He fails, however, to cite any authority other than a general cite to Chapter 15 of the Acts of the Apostles to support this assertion. *See id.* Though the Biblical cite does reference dietary laws typically associated with a kosher diet, it is not this Court's role to perform Biblical interpretation. *Thomas*, 450 U.S. at 716, 101 S.Ct. 1425 ("Courts are not arbiters of scriptural interpretation."). This Court may note, however, that a kosher diet is not typically associated with followers of Christian sects. When deciding a motion for a preliminary injunction, this Court must make a judgment as to the likelihood of success on the merits. Where, as here, Guzzi makes an argument for protection of a religious practice not generally associated with the system of beliefs of Christian–Catholics, this Court may properly adjudge that this argument does not demonstrate the likelihood of success required to support interim relief.

This evaluation of Guzzi's likelihood of success for purposes of interim relief does not foreclose his ability to successfully argue at trial or on a subsequent and prompt motion for summary judgment that he retains a religious right to keep kosher. *See Thomas*, 450 U.S. at 714, 101 S.Ct. 1425; *Hudson v. Maloney*, No. Civ.A. 01CV12145RGS, 2004 WL 626814, *1 (D.Mass. Mar.30, 2004) (Stearns, D.J.) (kosher and vegetarian meals are provided to Jews and to the Christian sect called Seventh Day Adventists). "Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others" to be entitled to protection. *Thomas*, 450 U.S. at 714, 101 S.Ct. 1425 (applying the stricter constitutional standard under the First Amendment)[2]. In addition, religious beliefs need not be shared by all of a religion's members to merit protection. *See id.* at 715–16, 101 S.Ct. 1425. Guzzi is not foreclosed from demonstrating through expert testimony that at least an ancillary tenet of Orthodox Catholics requires this practice. *See Wisconsin*, 406 U.S. at 216, 92 S.Ct. 1526 (relying on expert testimony

---

**1.** Professor Jay D. Wexler highlights, in the context of Intelligent Design, a problem with defining a practice religious only when it shares a nexus with an integrated belief. Jay D. Wexler, *Intelligent Design and the First Amendment: A Response*, 84 Wash. U.L.Rev. 63, 67 (2006). He notes that if this is so, schools would be able to teach other indisputably religious concepts like reincarnation, karma, and sin without violating the First Amendment. *Id.* Instead, Prof. Wexler offers that the correct test for whether some concept, practice, or belief in isolation is religious would be whether it "sounds in religion rather than in some other areas of intellectual inquiry, such that government promotion of that concept would be understood by a rea-

sonable person as an advancement or endorsement of religion." *Id.* This suggested test may be proper in an Establishment Clause inquiry where an over-inclusive test serves the purposes of the constitutional prohibition. Here, however, an over-inclusive test could lead to much abuse by prisoners and ultimately undermine the statutory purpose.

**2.** "[T]he strict level of scrutiny of the RLUIPA affords inmates more protection against religious infringement by correctional facilities regulations than the rational basis analysis under the First Amendment." *Spratt*, 2005 WL 3434739 at *2.

to support the plaintiff's Biblical interpretation). Such a determination necessarily becomes a question of fact. *See Wheeler v. Roman Catholic Archdiocese of Boston*, 378 Mass. 58, 58 n. 2, 389 N.E.2d 966 (1979).

Because Guzzi is not likely to succeed with the argument that keeping kosher is a protected religious exercise for an Orthodox Catholic, there is no need to reach the rest of the RLUIPA test—specifically whether the protected religious exercise was substantially burdened and whether the government demonstrated a compelling interest and regulated the practice through the least restrictive means available. In addition, since Guzzi does not satisfy the first factor necessary for interim relief, the latter three factors need not be discussed. *New Comm Wireless Servs. Inc.*, 287 F.3d at 9.

## III. CONCLUSION

Accordingly and for the foregoing reasons, Michael Thompson, Greg McCann, and Rabbi Blotner's motions to dismiss [Docs. No. 23 & 24] are DENIED. In addition, this Court denies any interim relief prior to final judgement. This case will stand for prompt trial on the merits without prejudice to any still more prompt, and properly supported, motion for summary judgment.

SO ORDERED.

**Rosario GUZZI, Plaintiff,**

v.

**Michael THOMPSON, Greg McCann, and Rabbi Blotner, Defendants.**

**Civil Action No. 06–10874–WGY.**

United States District Court, D. Massachusetts.

March 5, 2007.

Joan T. Kennedy, Department of Correction, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This case returns before this Court on cross-motions for summary judgment, the